CRAIG B. GARNER (CA SBN 177971)
T. MARK TUBIS (CA SBN 323083)
GARNER HEALTH LAW CORPORATION
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025
Email: craig@garnerhealth.com

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as
assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC
MORNINGSIDE RECOVERY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, a California corporation; ANTHEM, INC., a California corporation; ANTHEM, INC. doing business as ANTHEM HEALTH, INC., an Indiana corporation;  THE ANTHEM COMPANIES OF CALIFORNIA, INC., a California corporation; THE ANTHEM COMPANIES, INC., an Indiana corporation;  and DOES 1 through 20, Inclusive<br><br>Defendants. | Case No.   8:19-cv-00677<br><br>**COMPLAINT FOR**<br><br>1. **BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)**<br>2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **BREACH OF IMPLIED CONTRACT**<br>4. **PROMISSORY ESTOPPEL**<br>5. **QUANTUM MERUIT**<br>6. **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

1   ABC SERVICES GROUP, INC., a Delaware corporation ("ABC"), in its

2   capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY,

3   LLC, a California limited liability company ("Morningside" and ABC collectively

4   "Plaintiff") complains and alleges against Defendants ANTHEM BLUE CROSS

5   LIFE AND HEALTH INSURANCE COMPANY, a California corporation,

6   ("Anthem BCLH"), ANTHEM, INC., a California corporation ("Anthem CA"),

7   ANTHEM, INC. doing business as ANTHEM HEALTH, INC., an Indiana

8   corporation ("Anthem Indiana"), THE ANTHEM COMPANIES OF

9   CALIFORNIA, INC., a California corporation ("Anthem Co. of CA"), THE

10   ANTHEM COMPANIES, INC., an Indiana corporation ("Anthem Co. Inc.",

11   collectively with Anthem BCLH, Anthem CA, Anthem Indiana and Anthem Co. of

12   CA referred to hereinafter as "Anthem") and DOES 1 through 20 (the "Doe

13   Defendants", collectively with Anthem referred to hereinafter as "Defendants") as

14   follows:

15   ## THE PARTIES

16   **1.**   ABC is a corporation organized and existing under the laws of the State

17   of Delaware, with its primary place of business located in Tustin, California.

18   **2.**   Morningside, at all relevant times, provided professional medical and

19   mental health services and rehabilitation care for patients suffering from mental

20   health and substance use disorders ("SUDs") from its location in Irvine, California.

21   **3.**   Defendant Anthem BCLH is, and at all relevant times was, a California

22   corporation licensed to do business in and is and was doing business in the State of

23   California as a provider of health insurance benefits.  Plaintiff is informed and

24   believes, and based thereon alleges, that Anthem BCLH is licensed by the

25   California Department of Insurance and/or the California Department of Managed

26   Health Care to transact the business of insurance in the State of California, is in fact

27   transacting the business of insurance in the State of California and is thereby

28   subject to the laws and regulations of the State of California.

4.      Defendant Anthem CA is, and at all relevant times was, a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that Anthem CA is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

5.      Defendant Anthem Indiana is, and at all relevant times was, an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that Anthem Indiana is authorized by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

6.      Defendant Anthem Co. of CA is, and at all relevant times was, an California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that Anthem Co. of CA is authorized by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

7.      Defendant Anthem Co. Inc. is, and at all relevant times was, an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and

believes, and based thereon alleges, that Anthem Co. of CA is authorized by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

8.      On or about September 21, 2018, Morningside executed a written Assignment for the Benefit of Creditors (the "Morningside Assignment") pursuant to California Code of Civil Procedure §§ 493.010 through 493.060 and §§ 1800 through 18902.  Pursuant to the Morningside Assignment, Morningside conveyed to ABC all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors.  ABC brings this action in its capacity as the assignee for the benefit of creditors of Morningside pursuant to the Morningside Assignment and in its capacity as a "creditor" of Morningside, as defined in California Civil Code §3439.01(c).  A true and correct copy of the Morningside Assignment is attached hereto and incorporated herein by this reference as Exhibit A.

9.      The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such defendants by such fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that the Doe Defendants are those individuals, corporations and/or other business entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the services Plaintiff has provided as alleged in this Complaint.  This Complaint will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

10.     At all relevant times herein, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment, and

each of the Defendants has ratified and approved the acts of the agent.  At all relevant times herein, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims , issuing remittance advices and explanation of benefits ("EOB") statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

**11.**     Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**12.**     Plaintiff also asserts state law claims for relief in this Complaint over which this Court can assert pendent jurisdiction as such claims arise from a nucleus of facts common to both the state law and ERISA claims.  *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).

**13.**     This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein, occurred in this Judicial District because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District in which the breach, in part, occurred.

## INTRODUCTION

**14.**     In 2014, the 2010 Patient Protection and Affordable Care Act (the "ACA") required health insurance plans, including those sold by Anthem, to provide ten categories of "essential health benefits," including mental health

substance abuse treatment.  42 U.S.C. § 18022.  Under the ACA, states such as California established on-line health insurance exchanges (the "Exchanges") where entities such as Anthem had the ability to market new ACA-compliant plans. Plaintiff is informed and believes, and based thereon alleges, that Anthem marketed new plans that reimbursed out-of-network providers of SUD treatment like Plaintiff.

15.     At all relevant times herein, Plaintiff was a non-contracting (as to Anthem) mental and SUD treatment and rehabilitation facility operating in Orange County, California, also referred to as a "non-contracted" or "out-of-network" provider.  At all relevant times herein, Plaintiff offered a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUDs.

16.     Plaintiff is informed and believes, and based thereon alleges, that Anthem generally enters into private agreements with health care facilities  which gives them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider members/patients are responsible for charges that the plan might not cover, or that exceed Anthem's reimbursement obligation to members/patients under the Plans.

17.     Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Anthem and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements.  Plaintiff is further informed and believes, and based thereon alleges, that Anthem concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive

facility charges that are often imposed when a patient uses an out-of-network facility.

18.     Plaintiff provided and rendered services, SUD and/or mental health treatment to members, subscribers and insured of Anthem, each of whom was a patient of Plaintiff (collectively the "Patients").  As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from Anthem for those services and supplies Plaintiff rendered to the Patients.

19.     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for mental health and SUD treatment services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by Anthem and/or the Doe Defendants (collectively an "ERISA Plan" or the "ERISA Plans").

20.     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of mental health and SUD treatment as the benefit of the subject Anthem plans, policies and insurance agreements governing the relationship between each Patient and Anthem (collectively the "Anthem Plans").  Each of the Anthem Plans provided coverage for both in and out-of-network mental health providers, and for admission to treatment centers for SUD treatment by SUD treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis, including but not limited to coverage for facility charges, psychotherapy, psychiatrists, psychologists, charges for supplies and equipment, physician services, blood testing and other incidental services.

21.     Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of

service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider for Anthem.  The Patients' claims should not have been denied or underpaid as Anthem's Plans provide coverage for the very services performed by Morningside, including but not limited to coverage for mental and SUD treatment.

22.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit requirement treatment for SUD and/or were suffering from serious medical and mental health concerns, sometimes related to their addictions and sometimes unrelated.  Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Anthem.  Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

23.     Plaintiff requested that Anthem authorized Patient treatment at Morningside.  Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized Patient mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided.

24.     Plaintiff is further informed and believes, and based thereon alleges, that during the insurance verification process for the Patients, Anthem represented to Plaintiff that it would pay Plaintiff's fees.  Plaintiff sought information during this process about potential limitations on the reimbursement of Plaintiff's fees

each time prior to providing services, and specifically inquired as to how Anthem's fee provisions would apply to the Patients.

25.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that Anthem may have withheld information in response to such requests, and therefore misled Plaintiff into believing that services rendered by Plaintiff would be paid.

26.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Anthem to issue an Explanation of Benefits ("EOB") statement, or delineated and explained the justification or rationale for the refusal to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Anthem were therefore arbitrary, capricious and a breach of Anthem's fiduciary duties to plan participants.  These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* Anthem) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by Anthem.

27.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of Anthem to pay the fees for services charged by mental health care provider or by SUD treatment facilities, like Plaintiff, and to pay nothing.  These actions by Defendants were arbitrary, capricious and improper.

28.     Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan:  (a) provided coverage for each of the services, supplies and treatments rendered by Plaintiff to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that

these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Plaintiff or according to other formulae or allowable rates expressly and specifically provided in the Plans.

29.     Each of the Patients have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the Plans to Plaintiff in writing, including but not limited to their rights to recover the benefits owed to them by Anthem to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against Anthem.  These assignments conferred upon Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Anthem and/or as to the Plans administered by Anthem, including but not limited to, all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Anthem, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  A true and correct copy of a sample assignment signed by the Patients is attached hereto, and incorporated herein by this reference, as Exhibit B as if set forth in full.

30.     In compliance with the terms of each Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to Anthem.

31.     Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable.  Anthem's pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile.  As a result of Anthem's actions and/or omissions, Anthem is estopped from asserting that Plaintiff has

failed to exhaust its administrative remedies under ERISA.  Alternatively, by Anthem's failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## PLAINTIFF'S CLAIMS AGAINST ANTHEM

**32.**     The Patients have not been identified by name in this Complaint to protect their right of privacy, and a redacted list of all patient claims which make up Plaintiff's claims for damages is attached hereto and incorporated herein by this reference as Exhibit C.  Plaintiff is informed and believes, and based thereon alleges, that the amount due and owing from Anthem to Plaintiff resulting from the services Plaintiff provided to the Patients is $59,404,124.85.

**33.**     Each of the Patients received mental health and/or SUD treatment at Plaintiff's facility.  Payments are due and owing by Defendants to Plaintiff for the care, treatment and procedures provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Plaintiff through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

**34.**     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Anthem either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with Anthem for the specific purpose of ensuring that the Patients would have

access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Plaintiff.

35.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Anthem.  The identify of those Plans which are self-funded is known to Anthem, but is presently unknown to Plaintiff. Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants.  For these self-funded plans, Plaintiff is informed and believes, and based thereon alleges, that Anthem was a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

36.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Plaintiff and ensuring Anthem would pay for the health care expenses incurred by the Patients for the services rendered by Anthem.

37.     At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, SUD treatment or other health care services from Plaintiff.  Upon rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of those services.  Prior to the rendition of care by Plaintiff, Plaintiff sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Plaintiff.

**38.**     Each of the Patients requested Plaintiff to render and provide medical treatment and professional services, knowing that Plaintiff was an out-of-network provider.  Each of the Patients sought out, requested and requisitioned treatment and professional services from Plaintiff and selected and chose Plaintiff to provide him or her with said services based upon Plaintiff's reputation in the community, experience and availability to render immediate care. Each of the Patients signed written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at Plaintiff.

**39.**     Each of the Patients presented his or her insurance card to Plaintiff, which card identified the Patient as an insured, subscriber and/or member of Anthem.  These identification cards, which were issued by Anthem, did not identify whether the coverage was underwritten by Anthem as an insurer or whether Anthem was acting as a third-party administrator of a self-funded plan.  Prior to the rendition of professional services, treatments and the provision of care, and at such times as required by law, Plaintiff contacted Anthem with regard to certain Patients at the telephone number(s) identified on each card.  During each one of those phone conversations, Plaintiff identified the type of treatment that would be provided to the Patient to Anthem and verified that each of the Patients had coverage for such professional services and treatment, using the names and identification numbers listed on the insurance cards of the Patients.  During each one of those phone conversations, Anthem affirmatively confirmed, represented and verified that each of the Patients whose claims are involved in this action was an insured of or member of Anthem, that each of the Patients whose claims are involved in this action had coverage for mental health and SUD treatment benefits through their policies or plans, that each of the policies, plans and insurance contracts covering each of the Patients provided coverage for mental health and SUD treatment benefits and would pay for the services sought to be rendered by Plaintiff, and that

there were no exclusions, conditions or limitations which would result in claims submitted on behalf of each Patient being denied, rejected, refused or unpaid.

**40.** As a result of Anthem's offer to pay for the services rendered by Plaintiff to each of the Patients, Plaintiff was induced to and did provide and render professional services and treatment to the Patients at great cost to itself, and fully expecting that it would be paid for its service after submission of claims to Anthem. This expectation was further buttressed by the longstanding interactions, and business practices and customs that had been established between Plaintiff and Anthem over several years, which had resulted in Anthem's processing and payments of hundreds of prior claims on behalf of patients who had received care and treatment at Plaintiff.

**41.** Plaintiff is informed and believes, and based thereon alleges, that during each of these phone conversations, Anthem advised and represented that it would adjust all claims submitted by Plaintiff and would pay those claims according to its usual and customary fees or as specified in a subject Plan for a Patient.  Anthem never advised Plaintiff, however, whether a Patient's claim was insured or underwritten by Anthem, or whether Anthem was acting in the capacity of an administrator only in adjusting that claim on behalf of a self-funded plan.  To date, Anthem has not identified whether or which of the subject claims are insured, underwritten or only administered by Anthem.  Anthem has never indicated the name of any self-funded Plans or identified those Plans as responsible for payment of the claims for any Patient.  Plaintiff will seek leave to identify any and all self-funded Plans as self-funded and identify the proper name of that entity.

**42.** At all relevant times herein, representatives and agents of Defendants advised Plaintiff that each of the Patients was insured and covered for and was an eligible member or subscriber entitled to coverage under respective Plans for the services Plaintiff rendered, including mental health and SUD treatment benefits, that Plaintiff was authorized to render services, treatment and care, and that

Anthem would pay Plaintiff for performance of the services, care and/or treatment rendered by Plaintiff upon Plaintiff's submission of claim forms and invoices to Anthem.

**43.** At all relevant times herein, Anthem led Plaintiff to believe that Plaintiff would be paid a portion or percentage of its total billed charges, equivalent to the usual customary and reasonable amount charged by other similar SUD treatment facilities and specialists in the same geographical area or that other methodologies would be used to determine the amount that Anthem would pay Plaintiff.  In reliance upon the representations of Anthem that Anthem would pay for the services to be rendered to each Patient, Plaintiff was induced to, and did provide and render medical treatments and professional services to each of the Patients.  Had Anthem advised Plaintiff that there was no coverage for the treatments and services to be rendered by Plaintiff under the Patients' Plans or had Anthem not authorized treatment and verified coverage, Plaintiff would never have rendered services to the Plaintiffs or would have required each patient to self-pay for his or her treatments.

**44.** Plaintiff is informed and believes, and based thereon alleges, that each and every one of the Patients had express coverage for mental health and SUD treatment benefits under the applicable Plan or policy covering that Patient which was issued or administered by Anthem.  As such, each Plan was required to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same plan, as required by 26 U.S.C. § 9812(3)(A), which mandates that:

**45.** In the case of a group health plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan shall ensure that –

> **i.** the financial requirements applicable to such mental health or
>
> substance use disorder benefits are no more restrictive than the

predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan, and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and

**ii.**   the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

**46.**   Additionally, 26 U.S.C. § 9812(5) mandates that out-of-network providers such as Plaintiff be treated in parity with medical providers and with in-network providers of mental health and SUD treatment, stating:

In the case of a plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, if the plan provides coverage for medical or surgical benefits provided by out-of-network providers, the plan shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers in a manner that is consistent with the requirements of this section.

**47.**   Federal law also requires that insurers and Plans articulate the reason and rationale for any denial of benefits, stating:

The criteria for medical necessity determinations made under the plan with respect to mental health or substance use disorder benefits shall be made available by the plan administrator in accordance with regulations to any current or potential participant, beneficiary, or contracting provider upon

request. The reason for any denial under the plan of reimbursement or payment for services with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise required, be made available by the plan administrator to the participant or beneficiary in accordance with regulations.

48.     The failure and refusal of Anthem to articulate the reasons, rationales and/or criteria it used in denying benefits for coverage for the Patients' claims constitutes a breach of 26 U.S.C. § 9812(4) and the applicable regulations promulgated thereunder.

49.     The failure and refusal of Anthem to pay Plaintiff for the SUD treatments rendered by Plaintiff to the Patients violated 26 U.S.C. § 9812(3), *per se*. Plaintiff is informed and believes, and based thereon alleges, that Anthem has discriminated against it and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers.

50.     Plaintiff is informed and believes, and based thereon alleges, that Anthem has investigated, adjusted, processed and examined Plaintiff's claims in a manner different than the manner in which it investigates, adjusts, processes and examines the claims of medical providers, by subjecting Plaintiff's claims to delays, by requesting additional information which is irrelevant to the claim process, by offsetting payments it acknowledged were owed on claims for the Patients by amounts owed on account of other patients who were not related to the Patients but who were insured by Anthem and who had received SUD treatments at Plaintiff at different times when treatment had been rendered to the Patients. As a result, Anthem has breached the statutory mandates of 26 U.S.C. § 9812, *et. seq.* and owes payment benefits to Plaintiff in an amount no less than $59,404,124.85.

**51.** Plaintiff is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Plaintiff.

**52.** At all relevant times herein, Plaintiff was authorized by law to act on behalf of the Patient with respect to the filing of claims with Anthem, demanding production of documents from Anthem, filing appeals on behalf of the Patients with Anthem, and otherwise pursuing actions on behalf of the Patients with respect to the Patients' Plans in accordance with 29 C.F.R. § 2560.503.1(b)(4).

**53.** Plaintiff is not privy to, nor does it possess or have access to any of the EOC documents, SPDs, Plan Documents, policies or Certificates of Insurance which are issued to the Patients. As such, Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by Anthem, at any time prior to the date that Anthem processes, adjusts and pays each claim. These definitions were not imparted by Anthem to Plaintiff during the insurance verification or authorization process.

**54.** At all relevant times herein, Anthem has improperly or failed to pay and refused to pay Plaintiff for the medically necessary and appropriate services rendered to Anthem's insureds, subscribers and members for those treatments, services and/or supplies rendered by Plaintiff. For each of the Patient claims at issue in this action, Plaintiff provided medical services to members and insureds of Anthem.

**55.** Following the rendition of treatment by Plaintiff to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment. Plaintiff also provided medical records to Anthem for the treatment Plaintiff provided to the Patients.

**56.** For each of the claims at issue, Anthem failed and refused to adjust the claims and to issue EOB statements to Plaintiff in a timely manner as required

by federal law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Anthem.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was precluded and inhibited from appealing the effective denial of payment on the subject claims.

57.     For each of the claims at issue in this case, Anthem failed and refused to complete the claim examination process, delayed issuing EOB and EOP statements to Plaintiff, has requested unnecessary and irrelevant information and documentation from Plaintiff which has no bearing on or relevant to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Plaintiff.  For each of the claims at issue in this case, Anthem has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

58.     To the extent Anthem issued any EOB statements, Anthem did not explain how the claims were adjusted, disallowed or denied, and Anthem provided vague, ambiguous and uncertain explanations for the manner by which Anthem based its claim determination.  To the extent Anthem issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Anthem's denial of benefits.

59.     Plaintiff is informed and believes, and based thereon alleges, that Anthem's actions violated 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4), all due to Anthem's failure to provide a description of the Plain's review procedures and the time limits or deadlines applicable to such procedures.

60.     In each of the EOB statements issued by Anthem, if any, Anthem failed to advise Plaintiff and/or the Patients of the right of the Patients and/or

Plaintiff to appeal the adverse claim determination made by Anthem in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4).

## FIRST CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against All Defendants)

61.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

62.     Plaintiff is informed and believes, and based thereon alleges, that Defendants are discriminating against the Patients of Plaintiff who are suffering from a severe mental illness or SUDs by restricting benefits that are not imposed on other patients.

63.     This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

64.     Plaintiff is informed and believes, and based thereon alleges, that Defendants are the insurer, sponsor, and/or financially responsible payer, serving as its designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Anthem effectively controls the decision whether to honor or deny

the a claim under the Plan, exercises authority over the resolution of benefits claims, and/or has responsibility to pay the claims.  Anthem also plays the role as the *de facto* plan administrator for such Plans.

**65.**     Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.**  Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.**  Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.**  Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **d.**  Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

    **e.**  Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including but not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated

participants, beneficiaries and claimants, in violation of 29
C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for services rendered by
Plaintiff which Anthem authorized, as well as rescinding the
same, in violation of California Health & Safety Code §
1371.8 and California Insurance Code § 796.04;

**o.** Failing to offer coverage for mental health and SUD
treatment in parity with the medical and surgical benefits
afforded by the same Plan, as required by 26 U.S.C. §
9812(3), as well as other mandates set forth at 26 U.S.C. §
9812, *et seq.*; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments
provided to the Patients in violation of 26 U.S.C. § 9812(3).

**66.** The failure and refusal of Defendants to provide coverage,
reimbursement, payment and/or benefits for the SUD and/or mental health
treatment benefits rendered by Plaintiff to Plaintiff's patients who were covered
by Defendants and Defendants' denial of health insurance benefits coverage
constitutes a breach of the insurance plans and/or employee benefit Plans between
Defendants and Plaintiff's Patients.  Plaintiff seeks reimbursement and
compensation for any and all payments which it would have received and it will
be entitled as a result of Defendants' failure to pay benefits and cover those
services rendered by Plaintiff to the Patients, in an amount not less than
$59,404,124.85, according to proof at trial.

**67.** Defendants have arbitrarily and capriciously breached the obligations
set forth in the Plans issued by Defendants, and Defendants have arbitrarily and
capriciously breached their obligations under the ERISA Plans to provide Plaintiff
and the Patients with health benefits.

**68.** As a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Defendants paid the proper amounts, which Plaintiff estimates to be $59,404,124.85.

**69.** As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $59,404,124.85, or as otherwise determined at the time of trial.

**70.** Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

//

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

**71.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

**72.** Plaintiff is an assignee and intended beneficiary of its Patients' policies issued by Defendants and the rights conferred thereunder.

**73.** Each policy contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

**74.** Plaintiff provided covered, necessary mental health and SUD treatment services to the Patients with the understanding and expectation that

Defendants would act in good faith and deal fairly with Plaintiff pursuant to the Plans.

**75.** Defendants and each of them, however, tortiously breached the Plans and the implied covenant of good faith and fair dealing by the conduct alleged herein, including without limitation withholding of proper claim payments from Plaintiff, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed to Plaintiff, fraudulently representing to Plaintiff that defendants would pay the claims in accordance with the policies, fraudulently misrepresenting the terms of the policies, and forcing Plaintiff to initiate litigation to recover the policy benefits owed, failing to abide by the rules and regulations promulgated by the California Department of Insurance and the California Department of Managed Health Care, and by other acts and omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

**76.** Plaintiff is informed and believes, and based thereon alleges, that the conduct of Defendants, and each of them, as alleged herein constitutes part of an institutional illegal pattern and practice of bad faith and unlawful insurance practices.

**77.** Defendants' conduct constitutes a continuing tort that is causing Plaintiff continued damages.

**78.** The conduct of Defendants and each of them as alleged herein was undertaken by Defendants' officers, directors or managing agents who were responsible for supervision, operation, reports, communication and decisions. The conduct of said officers, directors and managing agents, and of other employees, representatives and agents, was undertaken on behalf of Defendants, which had advance knowledge of the action and conduct of said individuals

whose conduct and actions were authorized, ratified and approved by officers, directors or managing agents of Defendants.

**79.** As a direct and proximate result of Defendants' breach, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest. Under this Second Claim for Relief for breach of the implied covenant of good faith and fair dealing, Plaintiff seeks to recover the benefits payable under the EOC's between the Patients and Defendants, in an amount to be proven at trial, as well as tort damages that arise from Defendants' bad faith breach.

**80.** As a direct and proximate result of Defendants' breach, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the amount of at least $59,404,124.85, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof at trial.

**81.** As a direct and proximate result of Defendants' breach, Plaintiff has incurred attorney fees and costs as a result of efforts to secure the insurance benefits owed, in an amount according to proof at trial.

**82.** As a direct and proximate result of Defendants' breach, Plaintiff has sustained damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this Court in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied-In-Law Contract Against All Defendants)

**83.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

**84.** The Patients obtained the services in California and/or provided the assignment in California and/or are members of a California Plan.

**85.** Plaintiff obtained a valid assignment of benefits from each Patient of the Non-ERISA Plans to whom Plaintiff provided services. Anthem, for itself and

of behalf of the Non-ERISA Plans, acknowledged, consented to, and/or waived any objection to or limitation upon each such assignment of benefits.

86.     Under the terms of the Non-ERISA Plans at issue in this case and the assignments of benefits obtained by Plaintiff from each of the Patients of the Non-ERISA Plans to whom Plaintiff provided services, Anthem, for itself and on behalf of the Non-ERISA Plans, was obligated to pay benefits under the Non-ERISA Plans to Plaintiff, as assignee of the Patients' benefits, for the health care services provided by Plaintiff to the members of the Non-ERISA Plans pursuant to the out-of- network benefit provisions of the Non- ERISA Plans.

87.     The conduct between Plaintiff and Anthem and the circumstances of their interaction created an implied-in-fact contract.

88.     The out-of-network benefit provisions of the Non-ERISA Plans provide that benefit payments to Plaintiff, as assignee of the Patients' benefits, be calculated in accordance with the usual, customary and reasonable standard.

89.     As set forth more fully above, Anthem, for itself and on behalf of the Non-ERISA Plans, failed to pay Plaintiff for the health care services rendered to the members of the Non-ERISA Plans as required by the terms of the Non-ERISA Plans.

90.     The failure of Anthem, for itself and on behalf of the Non-ERISA Plans to pay Plaintiff constitutes a direct breach of the terms of the Non-ERISA Plans, as well as a breach of the Mental Health Parity and Addiction Equity Act and California Mental Health Parity Act.

91.     Plaintiff is informed and believes, and based thereon alleges, that the Patients of the Non-ERISA Plans entered into these plans for the specific purposes of (a) having access to SUD benefits in accordance with applicable Federal and California law, including 42 U.S.C. § 18022(b)(1)(E), 42 U.S.C. § 300gg-26 29 C.F.R. § 2590.712 and California Health & Safety Code §§ 1367.005, 1367.015

and (b) ensuring that Anthem will pay for health care expenses incurred by the members.

**92.** Plaintiff is informed and believes, and based therein alleges, that Anthem received, and continues to receive, valuable premium payments from the members under the Non-ERISA Plans.

**93.** For these patients, Plaintiff requested pre-authorizations or pre-certifications from Anthem prior to providing any treatment in order to ensure that these services would be covered and paid for under the Non-ERISA Plans. By representing that it would reimburse Plaintiff for its services, Anthem has impliedly requested Plaintiff to perform services for the Non-ERISA Plan members.

**94.** Plaintiff is informed and believes, and based thereon alleges, that Anthem intended to enter into an implied contract with Plaintiff, or knew, or had reason to knew, that Plaintiff would infer from Anthem's conduct that it intended to enter into an implied contract with Plaintiff.

**95.** Defendants breached the provisions of the Non-ERISA Plans' by underpricing and underpaying, or not paying at all, Plaintiff for the out-of-network services provided by Plaintiff to the members and covered under the Non-ERISA Plans, and due to Plaintiff as the assignee of the members' out-of-network benefits. The breaches also included, among other things, interpreting and implementing the Non-ERISA Plan terms in a way that systematically was arbitrary and capricious, making material misrepresentations and/or misleading statements regarding the manner in which out-of-network benefits are priced, making false and/or misleading representations that Plaintiff's out-of-network claims were paid based upon a comparison of Plaintiff's charges with amounts charged by similar providers for similar services or supplies, using improper methodologies and systems to miscalculate the usual and customary rate for Plaintiff's services, systematically reducing benefits paid to Plaintiff for its out-of-

network services, and providing an arbitrary and capricious benefit determination and appeal process.

96. Plaintiff is informed and believes, and based thereon alleges, the Non-ERISA Plan members and Plaintiff, as assignee of the Patients' benefits, satisfied all conditions and obligations under the Non-ERISA Plans, including, but not limited to, paying all premiums owed, obtaining all necessary prior authorizations for the procedures, if any, and submitting timely and complete benefit claims.

97. Plaintiff has performed all of its obligations and/or has been excused from performance as a result of Defendants' failure to perform.

98. As a direct and proximate result Defendants' breach of the Non-ERISA Plans, Plaintiff has been damaged in an amount to be proven at trial, plus interest at the maximum rate permitted by law.

99. Plaintiff respectfully request an award of attorneys' fees upon prevailing in the request for relief in this cause of action, as allowable by law.

//

## FOURTH CLAIM FOR RELIEF

### (Promissory Estoppel Against All Defendants)

100. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

101. As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiff at its usual and customary rates.

102. The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

**103.** Plaintiff relied on Defendants' promises in providing treatment to Defendants' insureds, and defendants, and each of them, should reasonably have expected to induce Plaintiff's action in providing treatment.

**104.** Plaintiff has suffered substantial detriment in reliance upon Defendants' promises in providing treatment to Defendants' insureds, including without limitation the benefits owed in the amount of at least $59,404,124.85, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

**105.** As a direct and proximate result of Defendants' breach of their promise, Plaintiff has sustained general and incidental damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial. Under this Fourth Cause of Action for promissory estoppel, and aside from the consequential damages set forth in paragraph 101 above, Plaintiff seeks to recover its fully-billed charges.

//

## FIFTH CLAIM FOR RELIEF

### (*Quantum Meruit* Against All Defendants)

**106.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

**107.** Plaintiff, as an out-of-network provider, provided mental health and SUD treatment services the Patients who were insured under Anthem Plans, preceded by authorization and verification of benefits by Defendants.

**108.** Consistent with the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation, which was fully and clearly understood by Defendants and each of them, that Plaintiff would be compensated for such services.

**109.** Plaintiff, as an out-of-network provider, must often decide on short notice whether and to what extent it can treat a patient. Requiring such providers

to, in effect, make an on-the-spot legal analysis whether the statements made by health care plans to authorize treatment and verify benefits constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patient and impose an unfair risk on health care providers that they would not get paid for providing treatments that are medically necessary. For this reason, the California Legislature enacted Health & Safety Code § 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider ***shall not rescind or modify this authorization after the provider renders the health care service*** in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility….
>
> (Emphasis added.)

**110.** In addition to reliance upon the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct between Plaintiff and defendants.

**111.** Defendants and each of them were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and had previously authorized and verified benefits for such treatment. Defendants and each of them were also aware that Plaintiff did not provide the subject treatment for free, and that Plaintiff would submit its total billed charges for said services and expect to be compensated.

**112.** Defendants and each of them also knew Plaintiff was not an in-network provider who had agreed to accept any pre-negotiated contract rates.

With such knowledge, Defendants and each of them issued payments for the subject treatment to out-of-network providers, including Plaintiff.

**113.**   Whereas payment by Defendants and each of them was either sporadic, inadequate, or nothing, and at some point in time Defendants ceased reimbursing out-of-network providers, including Plaintiff, for any treatment rendered.

**114.**   Defendants and each of them were at all times obligated under California law to provide or arrange for the provision of access for their insureds to health care services in a timely manner, and sought to satisfy this duty by providing a network of in-network providers for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

**115.**   Defendants are also liable to pay Plaintiff for treating the Patients and claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove. California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services. In effect, this makes an out-of-network provider eligible to receive up to 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

**116.**   Plaintiff is informed, and based therein alleges, that, there was a network gap with respect to the Patients' payments for whom they are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the mental health and SUD treatment required by those patients. Indeed, if Defendants objected to their

insureds obtaining treatment from an out-of-network provider such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an in-network provider? The only reasonable inference is that there were no such in-network providers who were in the position to treat the patients at issue. As a result, those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California health care law as it pertains to a "network gap."

117.    Defendants and each of them, by words and conduct, requested that Plaintiff provide medically necessary treatment to their insureds, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.

118.    As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, knew that Plaintiff was providing services to Defendants' insureds and promised to pay Plaintiff for the treatment and thereafter enjoyed the benefit of Plaintiff providing the services Defendants were obligated to ensure for their insureds.

119.    The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

120.    Plaintiff is entitled to be paid its usual and customary fees for the services provided, without regard to the payment provisions in Defendants' policies and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the Patients at issue.

**121.** The fair and reasonable value of the non-reimbursed services that Plaintiff provided to Defendants' insureds is at least $59,404,124.85.

**122.** Defendants and each of them, however, have failed and refused, and continue to refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's services as required by law.

**123.** As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and prejudgment interest.

**124.** As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the amount of at least $59,404,124.85, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

**125.** As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has sustained damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial.

## <u>SIXTH CLAIM FOR RELIEF</u>

### (Unfair Competition Against All Defendants)

**126.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**127.** Anthem has engaged in unfair and/or unlawful business practices by, inter alia:

> **a.** Failing to comply with applicable Federal and California law, including 42 U.S.C. § 18022(b)(1)(E), 42 U.S.C. § 300gg-26 29 C.F.R. § 2590.712 and California Health & Safety Code §§ 1367.005, 1367.015 by knowingly, among other things,

engaging in an "unfair payment pattern" (e.g., delaying payment of claims, reducing the amount of payment and/or denying payment of claims, failing on a repeated basis to pay uncontested portions of claims in a timely manner); and

**b.** Failing to comply with 42 U.S.C. § 300gg-9, California Insurance Code § 10117.52, which require disclosure to patients of pertinent facts or insurance policy provisions relating to any coverage issues.

128.   This conduct by Anthem constitutes illegal and unfair business practices under California Business and Professions Code § 17200, *et seq.*

129.   Plaintiff seeks restitution in an amount according to proof at trial, plus applicable statutory interest. Plaintiff also seeks an injunction prohibiting Anthem from continuing with these practices as set forth in this fifth claim for relief.

## PRAYER FOR RELIEF

**AS TO THE FIRST CLAIM FOR RELIEF**:

WHEREFORE, Plaintiff prays as follows:

1.   For an order that Defendants pay to Plaintiff an amount to be determined at trial for the Claims under the ERISA Plans;

2.  For economic damages according to proof;

3.   For attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

4.  For pre- and post-judgment interest as allowed by law;

5.  For such other and further relief as the Court deems appropriate.

//

//

**AS TO THE SECOND, THIRD, FOURTH AND FIFTH CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.** For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.** For economic damages according to proof;

**3.** For pre- and post-judgment interest as allowed by law;

**4.** For attorney's fees and costs of suit incurred herein; and

**5.** For such other and further relief as the Court deems appropriate.

**AS TO THE SIXTH CLAIM FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.** For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.** For pre- and post-judgment interest as allowed by law;

**3.** For attorney's fees and costs of suit incurred herein;

**4.** For injunctive relief;

**5.** For such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: April 9, 2019                    GARNER HEALTH LAW CORPORATION

By: _____/s/ Craig B. Garner_____
CRAIG B. GARNER
Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC MORNINGSIDE RECOVERY, LLC

1

## __DEMAND FOR JURY TRIAL__

2

3      Pursuant to the Seventh Amendment to the United States Constitution, and

4  any other applicable law, Plaintiff hereby requests a trial by jury for all claims

5  triable by jury.

6

7                           Respectfully Submitted,

8  Dated: April 9, 2019          GARNER HEALTH LAW CORPORATION

9

10

11                           By: _____/s/ Craig B. Garner_____

12                                CRAIG B. GARNER
                             Attorneys for PLAINTIFF ABC SERVICES
13                           GROUP, INC., in its capacity as assignee for
                             the benefit of creditors of MORNINGSIDE
14                           RECOVERY, LLC MORNINGSIDE
15                           RECOVERY, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28